NOTICE
Decision filed 03/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220130-U

NO. 5-22-0130

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 18-CF-342 |
| | ) | |
| MARVIN F. SMITH, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held:*   Where the circuit court and defense counsel complied with supreme court rules governing guilty pleas and neither defendant's counsel-assisted motion to withdraw the plea nor his *pro se* motion alleging counsel's ineffectiveness contained a meritorious reason for withdrawing the plea, the court properly denied defendant leave to withdraw. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2     Defendant, Marvin F. Smith, pleaded guilty to one count of criminal sexual assault. He filed a motion to withdraw the plea, which the circuit court denied. He now appeals.

¶ 3     His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that reversible error occurred. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion, and

1

this court has provided him with ample opportunity to respond and he has filed a brief response. However, after considering the record on appeal, OSAD's motion and supporting brief, and defendant's response, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                    BACKGROUND

¶ 5     Defendant was charged with two counts of criminal sexual assault as well as one count of unlawful restraint following an incident with T.N. Defense counsel filed a notice that defendant intended to rely on the defense of consent. The State, for its part, filed a motion *in limine*—which the court granted—to present the testimony of S.C. S.C., whom T.N. met while both were in the county jail, would purportedly testify that defendant committed similar offenses against her.

¶ 6     The State requested additional time to complete DNA testing, as it intended to test samples from bite marks on T.N.'s back because other samples proved inconclusive. At the hearing, the following exchange occurred:

> "THE COURT: On the vaginal and anal testing, did those match up to the defendant, Ms. Kurtz, or allegedly?
>
> MS. KURTZ: They're not a match. He cannot be excluded.
>
> THE COURT: The probability is very high?
>
> MS. KURTZ: Not as high as standard numbers. It's a mixture and it isn't—the female DNA is overwhelming because it was obviously off of her body."

¶ 7     One week prior to the scheduled trial date, the parties requested a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012). The court, Judge Thomas Griffith presiding, stated that, following a guilty plea to a single count of criminal sexual assault, it would likely

impose a sentence of eight years' imprisonment. The court could not accurately estimate the sentence it would impose for a conviction after trial.

¶ 8    Later that week, defendant accepted an agreement by which he would plead guilty to one count of criminal sexual assault in exchange for a sentencing cap of 15 years and the dismissal of the other charges. As Judge Griffith was unavailable, Judge Phoebe Bowers took the plea with the understanding that Judge Griffith would impose the sentence.

¶ 9    The court confirmed that defendant understood the statutory sentencing range of 6 to 30 years' imprisonment. However, the agreement capped the potential sentence at 15 years. Defendant told the court that he understood his right to a trial by judge or jury, the presumption of innocence, the burden of proof beyond a reasonable doubt, his right to present evidence and to remain silent, his right to cross-examine the State's witnesses, the right to appeal, and the requirement of sex-offender registration, which would be required as a result of the conviction.

¶ 10    Defense counsel stipulated to the prosecution's factual basis, which was that defendant hit, punched, choked, and slapped T.N. before forcing his penis into her mouth. Judge Bowers accepted defendant's guilty plea and set the case for sentencing before Judge Griffith. After that hearing, the court sentenced defendant to eight years' imprisonment, consistent with its prediction at the Rule 402 conference.

¶ 11    Defendant moved *pro se* to withdraw the plea, alleging that plea counsel was ineffective. Defense counsel thereafter filed a new motion and an amended motion to withdraw the plea. This last motion alleged that defendant's plea was not knowing and voluntary because he was "intimidated about proceeding to trial at the time of the plea, but has since decided that a trial would be in his best interest." Defendant did not "fully understand what he was admitting by

pleading guilty," believed that he had a valid defense based on consent, and that the sentence was excessive in light of the mitigating evidence.

¶ 12     At a hearing on the motion, defendant was asked, "After entering the plea of guilty, did you change your mind?" He responded, "Yes, I did." He later testified:

"I didn't understand because at the time the numbers that I was told if anything went wrong in trial what I be facing and that kind of, it scared me. My mind just went all over the place. You know, being at the age of 55, then my mom sitting there, you know, scared to death. I was afraid."

¶ 13     The court denied the motion. Defendant appealed, arguing that the court did not inquire into his *pro se* allegations that counsel was ineffective. The State confessed error and the Fourth District remanded the cause for the circuit court to consider these claims and decide whether to appoint new counsel. *People v. Smith*, No. 4-19-0500 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 14     Following remand, the court asked defendant to elaborate on his previous ineffective-assistance claims. He asserted that counsel had been ineffective in three ways. First, defendant had been intimidated by the number of years being discussed. Second, he believed that counsel should have filed a motion to dismiss the charges due to a violation of his speedy-trial rights. Third, counsel had not made time to go over the DNA evidence.

¶ 15     Counsel responded that she did not have any control over the State's plea offers. She had attempted to negotiate for a reduced charge that would not entail sex-offender registration but was unable to do so. There had not been an actionable speedy-trial claim, even without considering the court's grant of additional time for DNA testing. Counsel had met with defendant multiple times to discuss the evidence and had reviewed the DNA results with him. Counsel specifically stated,

4

"I know Mr. Smith and I thoroughly went through every single report prior to the trial, on at least multiple occasions." Counsel had been prepared to proceed to trial on February 19, 2019, and to impeach the credibility of both S.C. and T.N. (who were both in prison at the time of the trial). Counsel believed that there had been a genuine question of credibility and had been prepared to present a "consent" defense based on the forensic evidence.

¶ 16    The court denied the motion, noting that defendant had been aware of the evidence and the available defenses when he elected to plead guilty. Moreover, there had been no speedy trial violation and thus no grounds for counsel to allege one. Counsel had negotiated effectively, defendant had received the sentence he had bargained for, and the fact that he understood the hefty consequences were he to lose at trial did not constitute coercion or render his plea involuntary. Counsel had fully investigated the DNA evidence, discussed it with defendant, and prepared a suitable defense. Thus, defendant's claims of counsel's ineffectiveness were meritless and did not require the appointment of new counsel. Defendant timely appealed.

¶ 17                               ANALYSIS

¶ 18    As noted, OSAD concludes that there is no reasonably meritorious issue that would support an appeal. Specifically, counsel concludes that the court admonished defendant in substantial compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), the court did not err in denying the motion to withdraw the plea, and that postplea counsel complied with Illinois Supreme Court Rule 604(d) (July 1, 2017). We agree.

¶ 19    Initially, we agree that the court appropriately admonished defendant prior to accepting the plea. Rule 402(a) requires the court to admonish a defendant about the nature of the charges he or she faces, the minimum and maximum penalties for those offenses, the right to plead not guilty and proceed to trial, and that pleading guilty waives the right to any sort of trial. The court must

then decide on the record whether the plea is voluntary and discern a factual basis sufficient for the charge. Substantial compliance with the rule satisfies due process. *People v. Burt*, 168 Ill. 2d 49, 64 (1995).

¶ 20 Here, the court admonished defendant of the sentencing range, that he had the right to a jury or bench trial at which the State would be required to prove his guilt beyond a reasonable doubt, that he had the rights to call and cross-examine witnesses, to remain silent, and to appeal from an adverse judgment. The court confirmed that defendant had not been threatened or promised anything outside the record, and it heard a factual basis for the charge.

¶ 21 The court satisfied itself that defendant understood the nature of the charge and the maximum possible sentence of 15 years' imprisonment pursuant to the negotiated plea agreement, and that he was voluntarily waiving his rights. Thus, the court complied with Rule 402.

¶ 22 Next, OSAD concludes that there is no meritorious argument that the court erred by denying defendant's motion to withdraw his plea, given that its allegations were without merit. A defendant has no absolute right to withdraw his guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Rather, he must show a manifest injustice under the facts involved. *Id.* Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the defendant's guilt and justice would be better served through a trial. *Id.* A trial court's denial of a motion to withdraw a guilty plea will not be disturbed absent an abuse of discretion. *People v. Mercado*, 356 Ill. App. 3d 487, 494 (2005).

¶ 23 Here, defendant's principal argument was that he had been intimidated by the length of the possible sentences being discussed, which caused him to plead guilty in order to limit the maximum sentence. However, his fear of receiving a longer sentence after trial did not render his plea involuntary. It is likely that a great many guilty pleas are entered in order to avoid a much

6

longer sentence if the defendant were to lose at trial. But a plea is not involuntary merely because the defendant feared receiving a longer sentence after a trial. *People v. Patton*, 2023 IL App (1st) 211477-U, ¶ 29 (citing *People v. Cox*, 136 Ill. App. 3d 623, 629 (1985)); see also *People v. Edwards*, 49 Ill. 2d 522, 525 (1971) (attorney's suggestion that a longer sentence could be imposed if defendant did not plead guilty does not invalidate a guilty plea). This is not a case where defense counsel or the prosecutor misrepresented facts or threatened defendant to coerce him into accepting a plea. *Cf. People v. Algee*, 228 Ill. App. 3d 401, 404-05 (1992) (defense counsel, in addition to being unprepared for trial, guaranteed that the judge would impose the maximum sentence if defendant did not plead guilty).

¶ 24    In denying the motion, the court found that defendant understood the risks of going to trial and the terms of the agreement. Indeed, at the hearing, defendant testified that he had simply changed his mind about the relative risks of going to trial versus accepting the plea offer.

¶ 25    Defendant also claimed in his motion that he had a valid defense based on consent. However, he knew this when he entered the plea, as his attorney had already placed the State on notice that defendant intended to raise it.

¶ 26    Finally, defendant contended that his eight-year sentence was excessive in light of the mitigating evidence. However, defendant's plea agreement prohibited him from challenging the sentence. A defendant who enters into even a partially negotiated guilty plea—*i.e.*, one involving a material sentencing concession by the State—may not directly challenge the sentence and must instead seek leave to withdraw the plea. *People v. Evans*, 174 Ill. 2d 320, 327 (1996).

¶ 27    Here, of course, defendant did move to withdraw the plea, but an excessive sentence could not have rendered the plea involuntary. The eight-year sentence was precisely what Judge Griffith

7

estimated at the Rule 402 conference and well within the 15-year cap to which defendant agreed. Thus, this allegation amounts to nothing more than a complaint that the sentence was excessive.

¶ 28    OSAD further concludes that there is no meritorious contention that defense counsel failed to comply with Rule 604(d). The rule requires an attorney representing a defendant on a postplea motion to

> "file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 29    Here, the certificate counsel filed followed the language of the rule nearly verbatim. Moreover, nothing in the record suggests a lack of compliance. Counsel filed an amended motion and supported it with defendant's testimony. Thus, counsel complied with the rule.

¶ 30    Finally, OSAD suggests that there is no meritorious argument that the circuit court erred in disposing of defendant's claims that counsel was ineffective. " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). To establish prejudice in the context of a guilty plea, a defendant must show that there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial. *People v. Hall*, 217 Ill. 2d 324, 335 (2005).

¶ 31    When a defendant makes an ineffective-assistance claim, the court should first examine its factual basis. *People v. Jackson*, 2020 IL 124112, ¶ 97; see *People v. Krankel*, 102 Ill. 2d 181 (1984). If the court finds that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *Jackson*, 2020 IL 124112, ¶ 97. However, if the allegations show possible neglect of the case, new counsel should be appointed. *Id.*

¶ 32    Here, defendant raised three principal claims: (1) the length of the possible sentences being discussed had intimidated him; (2) counsel did not move to dismiss the charge due to a violation of the speedy-trial statute; and (3) counsel did not review DNA test results with him when he first asked her to do so.

¶ 33    Defendant's first contention is without merit. As noted, a defendant's fear of receiving a longer sentence following trial—whether engendered by defense counsel or someone else—does not render a plea involuntary. *Edwards*, 49 Ill. 2d at 525.

¶ 34    Defendant's speedy-trial contention likewise fails. Initially, a defendant's decision to plead guilty usually waives any speedy-trial claims. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). However, a guilty plea does not necessarily waive a claim that trial counsel was ineffective in failing to dismiss a charge for violation of the statute. See *People v. Phipps*, 238 Ill. 2d 54, 64 (2010). Therefore, the initial question must be whether there was an arguable speedy-trial violation prior to the guilty plea. The record reveals that, allowing for agreed continuances and the court's grant pursuant to statute of extra time for the State to gather evidence and complete DNA testing, defendant was brought to trial within the statutory period.

¶ 35 A defendant in custody "shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2018). However:

> "(c) If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days. If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days." *Id.* § 103-5(c).

¶ 36 Defendant was arrested on March 5, 2018. On March 28, 2018, the State requested a continuance of the arraignment. Although defense counsel objected "for the record," she did not demand trial at that time. Defendant was arraigned on April 4, 2018. On May 29, 2018, at defendant's request, the cause was set for trial on July 16, 2018. On July 11, 2018, the court granted the State's motion to continue and reset the trial date for August 20, 2018. By agreement, that date was vacated.

¶ 37 On September 6, 2018, on defense motion, the case was set for trial on October 15, 2018. However, on October 12, 2018, because the parties were still awaiting DNA test results, they agreed to postpone the trial until December 10, 2018. On December 4, 2018, the court granted the State's motion for additional time to conduct DNA testing and reset the trial for January 14, 2019. On January 9, 2019, the court granted a joint motion to continue the trial to February 19, 2019. On that date, defendant pleaded guilty.

10

¶ 38    Defendant was not responsible for the delays between his arrest and the arraignment. Thus, the 23 days between March 5, 2018, and March 28, 2018, were attributable to the State. See *People v. Murray*, 379 Ill. App. 3d 153, 158 (2008) (120-day period begins to run automatically from the day the defendant is taken into custody, and the defendant need not make a formal demand for trial). The court honored defendant's trial demand on May 29, 2018, setting a date within the 120-day period.

¶ 39    The court then, on July 11, 2018, granted the State an additional 40 days to obtain material evidence. See 725 ILCS 5/103-5(c) (West 2018). While the "clock" was thus extended, the 82 days of delay between May 29, 2018, and August 20, 2018, were arguably attributable to the State because trial remained set within the statutory speedy trial term. See *Murray*, 379 Ill. App. 3d at 159 (delay is occasioned by and charged to defendant where his acts " 'caused or contributed to a *delay resulting in the postponement of trial*' " (emphasis in original) (quoting *People v. Hall*, 194 Ill. 2d 305, 326 (2000)); thus, unless the trial date is postponed, there is no delay attributable to the defendant).

¶ 40    However, by agreeing to a general continuance, defendant consented to the delay between August 20, 2018, and September 6, 2018, when he demanded trial. The 36 days between that date and defendant's agreement to continue the trial on October 12, 2018, were attributed to the State. As the cause remained set for trial, the 53 days between October 12, 2018, and December 4, 2018, were arguably attributable to the State as well.

¶ 41    Thus, as of December 4, 2018, as many as 194 days were arguably attributable to the State. However, on October 12, 2018, defendant agreed to setting a trial date on December 10, 2018, which waived any objection that that date was beyond the statutory term. See *People v. Cordell*, 223 Ill. 2d 380, 390 (2006).

¶ 42 The court then granted the State an additional 41 days to complete DNA testing and reset the trial for January 14, 2019. The parties agreed to a further continuance until February 19, 2019, at which point defendant pleaded guilty. Ultimately, well over 120 days, possibly as many as 235, were attributable to the State by the time of trial. However, the court properly granted the State's written motions for extensions to gather evidence, and December 4, 2018, to finish testing of DNA evidence. Both extensions were granted before the statutory period had run. See 725 ILCS 5/103-5(c) (West 2018).

¶ 43 Because the trial court granted the State's motions for additional time pursuant to the Act and because defendant agreed to the delays in October 2018 and January 2019, there was no arguable violation of the speedy-trial statute for counsel to raise.

¶ 44 Defendant has never argued that the court abused its discretion in granting the State additional time pursuant to section 103-5(c) and the record does not show any apparent lack of diligence by the State. See generally *People v. Colson*, 339 Ill. App. 3d 1039, 1047 (2003). "Defendant's ineffective assistance of counsel claim cannot succeed because trial counsel's failure to raise a speedy-trial violation was neither deficient nor prejudicial under these circumstances." *Phipps*, 238 Ill. 2d at 70.

¶ 45 Defendant's final allegation of counsel's ineffectiveness was that counsel did not review the DNA evidence with him when he first asked to see it. Counsel refuted this allegation, and in any event, defendant conceded that he had seen the evidence before he pleaded guilty and was aware that it was not a match. He did not explain how seeing the evidence earlier would have altered his decision to accept the plea. As none of defendant's ineffective-assistance allegations had even arguable merit, the court did not abuse its discretion in failing to appoint new counsel for defendant.

¶ 46 In his response, defendant first claims that DNA evidence, if properly presented, could prove his innocence. Defendant was aware when he pleaded guilty that DNA recovered from T.N. did not match his. Moreover, he has never denied having sex with T.N. but claimed that it was consensual. The presence or absence of his DNA would not be probative of whether sex was consensual.

¶ 47 Defendant further claims that he "did not fully grasp" the "full scope" of his rights. However, he fails to specify which rights he did not understand. Moreover, the record contradicts this claim. As noted, the court admonished defendant pursuant to Rule 402. He stated at each juncture that he understood the admonishments. To now allow him to withdraw his plea based on a blanket denial that he understood the admonishments would be to reduce them to "merely a perfunctory or ritualistic formality." *People v. Jones*, 144 Ill. 2d 242, 263 (1991).

¶ 48 His final substantive claim, that his ineffective assistance argument was "not properly presented at time of filing," is unclear. Defendant initially raised the ineffective-assistance argument himself in a *pro se* motion to withdraw the plea and at the *Krankel* hearing so any failure to present the argument in the circuit court is his own. If he is referring to OSAD's motion to withdraw, he fails to specify what aspects of the argument were not properly presented or how they could have been better presented. Counsel's memorandum devotes more than six pages to the ineffective-assistance argument and includes extensive citations to the record and to relevant caselaw to explain why defendant's contentions of ineffective assistance were not meritorious. Defendant points to no specific examples to show how counsel's presentation was deficient.

¶ 49                                    CONCLUSION

¶ 50 As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

13

¶ 51    Motion granted; judgment affirmed.